421 So.2d 1178 (1982)
Harry E. LINDSTROM, Plaintiff-Appellee,
v.
Julia ARNOLD, Carolyn K. Arnold, United Services Automobile Association Casualty Insurance Company and Peter Howard, Defendant-Appellant (Plaintiff-in-Reconvention).
No. 15023.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
Writ Denied December 20, 1982.
*1179 DeLaune, Blondeau, and Hall by James D. Hall, Bossier City, for plaintiff-appellee Harry E. Lindstrom.
Sockrider & Bolin by James E. Bolin, Jr., Shreveport, for defendant-appellant (Plaintiff-in-Reconvention), Julia Arnold.
Lunn, Irion, Switzer, Johnson & Salley by Frank M. Walker, Jr., Shreveport, for defendant-appellant Commercial Union Ins. Co.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for defendant-appellant United Services Automobile Association Casualty Ins. Co.
Before HALL, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
This is an action for damages arising out of a three car collision. The plaintiff is *1180 Harry Lindstrom. The defendants are Julia Arnold, Carolyn Arnold and United Services Automobile Association Casualty Insurance Company, Lindstrom's liability and uninsured motorist insurer. Julia Arnold [1] reconvened against Lindstrom and USAA, and made a third party demand against Commercial Union Insurance Company, her insurer. After a trial on the merits the district judge found both Lindstrom and Arnold negligent and that Arnold's coverage with Commercial Union had been terminated at her request. The district judge rendered judgment rejecting the demands of all parties. Arnold appeals.
This appeal presents the following issues: (1) what was the negligence of Lindstrom and Arnold; (2) if Arnold is entitled to recover on her reconventional demand what are her damages; and (3) did Commercial Union have a duty to defend Arnold in this action.[2]

The Facts
This accident occurred at approximately 6:30 a.m. on February 7, 1980. The accident occurred in the west bound lanes of Interstate 20 in Bossier City, Louisiana.
The parties and their respective witnesses disagree as to how the accident happened. Arnold and her witnesses testified that the accident occurred in the manner set out below.
Arnold and Carolyn, her 19 year old daughter, were driving west on I-20 from their home in Haughton to Shreveport where they worked. They were in Arnold's white 1966 Mercury. Because of the early hour Arnold had her lights on.
As Arnold and Carolyn drove west through Bossier City the motor of their car stopped. Arnold attempted to restart the engine as they coasted but could not. She then decided to coast to the next exit and off the highway but was unable to do so. The Mercury came to a stop on a rise in the elevated highway approximately 1,000 feet east of the Hamilton Road exit. At the point where the Mercury stopped the I-20 has four lanes, an exit only lane on the far right and three through lanes.[3] The area was well illuminated by numerous vapor street lights.
The Arnold vehicle stopped in the right center lane just east of the crest of the rise in the highway. After again trying unsuccessfully to restart the engine Arnold got out of the car and opened the hood where she discovered a fire in the engine compartment. Arnold quickly got a piece of cloth out of the back seat and used it to extinguish the blaze.
While the Arnold vehicle was stopped several other cars successfully maneuvered around it. However, Arnold decided that she should remove the vehicle from the highway before the morning traffic became heavy.
Arnold instructed Carolyn to take the wheel while she pushed the car over the crest of the rise and to steer it to the exit and off the highway when it coasted down the other side.[4] Arnold, who was wearing white pants and a black coat, then went to the rear of the car to push, at which time she noticed that the taillights and right turn signal were all in operation as were the headlights.
Just as Arnold began to push her vehicle she and it were struck from the rear by an Opel driven by Harry Lindstrom. The Opel rebounded from the impact and partially obstructed the left center lane and was there struck by a pickup driven by Peter *1181 Howard and the Opel again struck Arnold and her vehicle.[5]
Arnold briefly lost consciousness after being hit the second time and fell to the road surface. Upon regaining consciousness Arnold feared she might be run over by oncoming traffic and rolled herself into the right lane. Approximately five minutes elapsed from the time the Arnold vehicle stopped until the collision occurred.
Arnold's version of the accident as established by her testimony is supported by the testimony of Carolyn and Edward Boyd, the Bossier City police officer who investigated the accident.
According to Lindstrom the accident occurred in the following manner.
Lindstrom was driving west in the right center lane of I-20 at a speed of 45-50 miles per hour. There was traffic in the lanes to his left.
Upon cresting the rise in the highway he saw a flash of movement in the road ahead and removed his foot from the accelerator. A "split second" later his headlights revealed an unlighted car with someone at its rear, stopped about 30 feet away. He applied his brakes and downshifted in an effort to stop.
Lindstrom could not change lanes to the left because of traffic and he did not move into the right lane because he believed the pedestrian was moving in that direction. Realizing he could not avoid the collision Lindstrom steered as far left as possible in hopes of avoiding the pedestrian and closed his eyes just before the right front of his vehicle struck the left rear of the Arnold vehicle. Lindstrom's vehicle was then struck by the Howard pickup and driven into the Arnold vehicle a second time.
Lindstrom's version of the accident is supported by the testimony of Peter Howard and Howard's passenger, Wilson White.
Lindstrom brought this action seeking damages for his injuries, the damage to his car and medical expenses. Arnold reconvened against Lindstrom and USAA for damages due to her injuries. Arnold also made a third party demand against Commercial Union for penalties and attorney's fees for its failure to defend her in this action. The LSU Medical Center intervened to recover the cost of Arnold's treatment.
The case was tried on the merits and the district judge rendered the judgment complained of. Arnold then took this appeal.

Issue # 1 Negligence
The resolution of this issue requires two inquiries: (1) was Lindstrom negligent and (2) if so, was Arnold contributorily negligent.
The district judge concluded that both Lindstrom and Arnold were negligent. Regrettably, his brief written reasons for judgment do not set out the basis for these conclusions.
We note that Lindstrom's version of the accident is inconsistent with the finding that he was negligent. This is so because in Lindstrom's version he, through no fault of his own, could not see the Arnold vehicle until it was only 30 feet away. We also note that Lindstrom's version is somewhat inconsistent in that there would have been no need for Arnold to push her vehicle if it had been on a steep down slope as he claimed.
We conclude, in light of the inconsistency of Lindstrom's version and the trial judge's finding of negligence on Lindstrom's part, that the trial judge found that the accident occurred in the manner and at the location described by Arnold. We further conclude that the trial judge must have found Lindstrom negligent in failing to maintain a proper lookout and Arnold negligent in attempting to remove the car rather than warning approaching traffic.[6]
*1182 There is substantial evidence to support the trial judge's apparent factual conclusion that the accident happened as described by Arnold and her witnesses. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Thus we accept the Arnold version of the accident as correct and now turn to the question of the negligence of Lindstrom.
The first duty of a motorist is to maintain a sharp lookout ahead. Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400 (La.1978); Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958).
An approaching motorist has the duty to discover a stalled vehicle if he can do so with the exercise of the required degree of care. Travelers Insurance Company v. Harris, 294 So.2d 588 (La.App. 4th Cir.1974). Even if an obstruction is illegal motorists are not excused from exercising the required degree of care in observing. Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148 (1945).
Generally, when a following vehicle collides with the preceding vehicle the following motorist is presumed to be negligent and must exculpate himself. Tidwell v. Ocean Systems, Inc., 356 So.2d 466 (La.App. 1st Cir.1977).
The record shows that Lindstrom should have been able to see Arnold's white car on this well lighted highway at a distance of more than 500 feet. Had Lindstrom been maintaining a proper lookout he would have seen the Arnold vehicle from that distance and he could have easily avoided the accident by either stopping or by slowing to allow the traffic to his left to pass and then changing lanes.
Where, as here, a stalled car could be seen and avoided by the exercise of the appropriate level of care, a driver is negligent in failing to see the vehicle and avoid it. Smiley v. Ellis, 307 So.2d 150 (La.App. 1st Cir.1974), writ refused 310 So.2d 643 (La.1975); cf. Bodan v. American Employers' Insurance Company, 160 So.2d 410 (La. App. 2d Cir.1964) (failure to keep proper lookout and excessive speed). Thus, we are in accord with the trial judge's conclusion that Lindstrom was negligent and that his negligence was a cause of the accident.
We now consider whether Arnold was contributorily negligent. The trial judge's conclusion that Arnold was negligent was apparently based on her failure to warn following motorists.
USAA contends that Arnold was negligent because of her violation of LSA-R.S. 32:141[7] and R.S. 32:442. This contention is not well founded.
The provisions of R.S. 32:442 relied on by USAA were repealed in 1962. The present provisions of that section are irrelevant to this case.[8]
LSA-R.S. 32:141(A) prohibits parking or stopping on highways outside of residential or business districts. However, that prohibition does not apply where, as here, a vehicle stops on the highway because it is disabled. LSA-R.S. 32:141(B); Mahoney v. Arline, 173 So.2d 346 (La.App. 2d Cir.1965). Thus, there was no violation of § 141(A) by Arnold.
*1183 However, USAA contends that Arnold violated her duties under § 141(B) by failing to warn oncoming traffic.
The area of the highway where the Arnold vehicle stalled is elevated and, therefore, has very little shoulder area. The right and right center lanes enter the highway a relatively short distance east of the accident site. Because of the configuration of the highway there was no safe place from which Arnold could have given an adequate warning to the traffic.
Had Arnold stationed herself on the right side of the highway it is highly unlikely that any warning she might have given would have been noticed by vehicles in the two leftmost lanes. Had she stationed herself on the left edge of the highway any warnings would likely have been ineffective to motorists in the two rightmost lanes.
It appears that the only point from which Arnold could have given warnings that would have been effective towards all approaching traffic was at the confluence of the highway and the entrance ramp where the two rightmost lanes joined it. At that point Arnold would have been in a position of extreme danger surrounded by traffic on both sides.
Though traffic was relatively light when her car stalled Arnold knew that it would soon increase. The danger presented by the presence of the stalled vehicle would have increased with the traffic.
In light of these facts and the difficulty of giving an adequate warning Arnold's decision to attempt to push the vehicle off the highway was reasonable and in accord with the first duty imposed on her by § 141(B) and responded to the danger recognized by the legislature in § 141(A) as well.
Arnold's duties under § 141(B) were: (1) to remove the vehicle and (2) to "protect" oncoming traffic until she had done so. In attempting to remove the vehicle Arnold was employing the best method available to her to "protect" traffic. Arnold was a large woman and her plan to push the car a short distance to the descent side of the crest in the highway and down the west side of the crest while it was being guided toward the Hamilton Road exit by her daughter was a reasonable plan that would have provided immediate removal of the obstructing stalled car from the I-20 highway. Arnold's action fulfilled her obligations under the statute and under these circumstances she cannot be said to have violated a duty to warn approaching motorists while she was attempting to remove the vehicle from the highway.
The district judge was clearly wrong in concluding that Arnold's conduct was negligent. See Arceneaux, supra. As Arnold was not negligent she is entitled to recover and we now turn to the question of her damages.

Issue # 2 Damages
Arnold did not seek to recover for the damage to her automobile. Further, as she was treated at the LSU Medical Center and it has neither appealed nor answered this appeal we cannot make any award for the cost of Arnold's past medical treatment. Thus, the only items claimed from USAA and Lindstrom by Arnold are general damages relating to her injuries and future medical expenses.
Each personal injury must be evaluated according to its own peculiar facts and circumstances in determining the amount of damages sustained. Profit v. Linn, 346 So.2d 253 (La.App. 1st Cir.1977).[9]
In making an initial award of damages at the appellate level we are not limited to an award of either the highest or lowest amount we would affirm; instead, we set the award in an amount which is just for the damages revealed by the record. Wall v. American Emp. Ins. Co., 377 So.2d 369 (La.App. 2d Cir.1979), affirmed 386 So.2d 79 (La.1980).
The record shows that Arnold was 37 years old at the time of the accident.
*1184 She earned $3.75 per hour from her employment as a nurses aid.
Arnold suffered numerous injuries in the accident including Colles' type fractures of both wrists, carpal tunnel syndrome of the left wrist, lacerations and contusions of both legs and mild chondromalacia of the left knee. The evidence shows that Arnold suffered extreme pain following the accident.
The injury to Arnold's left wrist was so severe that it required surgery for reduction of the fracture, internal fixation of the fracture with a Rush rod and decompression of the median nerve. A second operation was required to remove the rod.
Arnold was hospitalized for a total of fourteen days. Her wrists were placed in casts for five weeks following the accident. During that period Arnold could not feed, clean or dress herself and she even required assistance in all physical activity necessary for her personal hygiene.
Though Arnold underwent physical therapy for her wrists she still suffers pain and a loss of motion in both wrists. She has difficulty performing tasks which put pressure on her wrists, such as sweeping or raking leaves, since the accident.
Since the accident Arnold has been troubled with episodes of vertigo. She has also been left with a large scarred and numb area on her left thigh. She suffers a 20% disability of the left wrist, a 10% disability of the right wrist and a 10% disability of the left leg.
The record shows that Arnold suffered serious injuries which required hospitalization, two surgeries and physical therapy for their treatment. The injuries have caused her substantial pain and gross inconvenience. The injuries have left her with a considerable degree of disability. Under the circumstances we think an award of $45,000.00 is appropriate for past and future pain and suffering, disability, mental anguish and inconvenience.
A claim for loss of earnings need not be proved with mathematical certainty but only by such proof as reasonably establishes the claim. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Loetzerich v. Texas Pacific-Missouri Pac. T.R. of N.O., 325 So.2d 626 (La.App. 4th Cir.1976), writ refused, 329 So.2d 469 (La.1976).
Appellant did not return to work following the accident until April 11, 1981. At that time she obtained part-time work at a nursing home at a lesser wage than she had earned prior to the accident. Arnold testified that because of limited use of her hands she had great difficulty in performing her duties. She was unable to perform some tasks, such as making beds, and was very slow at others, such as changing patients clothes. Arnold stopped working on September 19, 1981, because of her inability to properly perform her duties.
Arnold earned approximately $9,000.00 the year preceding the accident. She was unable to work for fourteen months following the accident. At the time of trial her ability to work was substantially diminished by the residual disability from her injuries. In light of these facts Arnold's request in brief for an award of $20,000.00 for loss of past and future earnings is not excessive and we fix the award in that amount.
We note finally that Arnold's claim for future medical expenses is too speculative to justify any award.

Issue # 3 Duty to Defend
We now consider whether Commercial Union was under a duty to defend Arnold. We conclude that it was not.
The facts relevant to this issue are set out below.
On February 4, 1980, three days before the accident, Arnold purchased a used Plymouth Duster. The seller would not allow Arnold to remove the car from its lot until she had the Duster added to her insurance policy.
Arnold telephoned her insurance agency, Northwest Louisiana Insurance Agency, to arrange coverage. Arnold spoke to Norma Wiggins.
*1185 Arnold testified that she instructed Wiggins only to add the Duster to her policy. However, she also admitted that she told Wiggins that she was going to cease using the Mercury because it used too much fuel.
Wiggins testified that Arnold instructed her to add the Duster to her policy and to terminate coverage on the Mercury because it was to be junked. Wiggins sent the changes to Commercial Union later that day.
The Duster broke down on the day Arnold bought it. Therefore, she continued to use the Mercury and was using it on the day the accident occurred.
Arnold argues that, as the Mercury would have been covered if she had not notified Northwest, she should not be deprived of coverage because she had informed Northwest of her purchase of the Duster.
This argument would have more weight if Arnold had only informed her agent of the purchase. However, the trial judge found that she had also instructed that coverage on the Mercury be terminated. There is substantial evidence in the record to support the trial judge's finding. See Arceneaux, supra.
Insurers are bound by the actions of their agents. Bank of Coushatta v. Thomas, 378 So.2d 1041 (La.App. 2d Cir. 1979). Notice of the acquisition of a new car to the insurance agent is imputed to the insurer and sufficient to bind the insurer and provide coverage. Mathews v. Marquette Casualty Company, 152 So.2d 577 (La.App. 2d Cir.1963), writ denied, 244 La. 662, 153 So.2d 880 (1963); Fowler v. Gulf Insurance Company, 306 So.2d 406 (La.App. 3d Cir.1975).
If notice to the agent is sufficient to provide coverage then notice to the agent is sufficient to terminate coverage. We conclude that coverage on the Mercury was terminated on February 4th at Arnold's request and instruction. For this reason Commercial Union was under no duty to defend her in this action.
For the foregoing reasons the judgment of the district court is reversed insofar as it rejects Arnold's demands against Lindstrom and USAA and judgment is rendered in Arnold's favor. We recast part three of the judgment to read as follows:
(3) "That there be judgment in favor of plaintiff-in-reconvention, Julia Arnold, and against defendants-in-reconvention, Harry E. Lindstrom and United Services Automobile Association Casualty Insurance Company, in solido, in the sum of Sixty-Five Thousand ($65,000.00) and No/100 Dollars, with legal interest from date of judicial demand and costs; and rejecting third party plaintiff, Julia Arnold's, demands against third party defendant, Commercial Union Insurance Company, at her costs."
As AMENDED the judgment is AFFIRMED.
All costs of this appeal are taxed against Harry E. Lindstrom and United Services Automobile Association Casualty Insurance Company.
NOTES
[1] Hereinafter we will refer to Julia Arnold simply as "Arnold."
[2] Because of our resolution of these issues we find it unnecessary to consider Arnold's contention that the trial judge allowed improper evidence on rebuttal.
[3] We will refer to the exit or rightmost lane as the "right" lane, to the second lane from the right as the "right-center" lane, to the third lane from the right as the "left-center" lane and to the fourth lane from the right or leftmost lane as the "left" lane.
[4] Arnold is a very large woman who probably had the strength to push the car.
[5] Howard is also a defendant in this action but he was not served and appeared at trial only as a witness.
[6] Neither party has seriously suggested any other basis for the trial judge's findings on negligence.
[7] LSA-R.S. 32:141: A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.

B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.
[8] We also note that LSA-R.S. 32:368, which now covers the area previously covered by § 442, is not applicable to private automobiles such as those involved here.
[9] This concept also underlies our review of damage awards made by trial courts under the rule of Reck v. Stevens, 373 So.2d 498 (La. 1979).