501 So.2d 1071 (1987)
Monroe F. OGDEN, Plaintiff-Appellee,
v.
Burton P. DALTON, et al., Defendant-Appellant.
O.F. NEALY and Richard O. Nealy, Plaintiffs-Appellees,
v.
Burton P. DALTON, dba Dalton Enterprises, Defendant-Appellant.
Nos. 18394-CA and 18395-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
*1072 Theus, Grisham, Davis & Leigh by David H. Nelson, Monroe, for defendant-appellant.
Napper, Waltman, Madden, Rogers & Waltman, by Lee B. Waltman, Ruston, for plaintiffs-appellees.
Before HALL, MARVIN and SEXTON, JJ.
MARVIN, Judge.
Dalton, who rear-ended a delivery van that had entered the interstate highway on which Dalton was driving his truck, appeals judgments for money damages which assessed him with 100 percent of the fault. Dalton contends that the van driver was wholly, if not partially, at fault and that, in any event, the awards to the driver for general damages ($15,000) and to the owner of the van for the loss of the van ($5,200) are abusively high and should be reduced.
The van driver, Ogden, was employed by, and was on a business mission for, the van owner, Nealy. For their respective damages, Ogden and Nealy brought separate actions which were consolidated in the trial court.
LRS 32:81(A) imposes duties on a following vehicle. Dalton was found by the trial court to have been a "following driver" who was presumed to have been at fault. Lindstrom v. Arnold, 421 So.2d 1178 (La. App. 2d Cir.1982), writ denied. Section 123 imposes duties on a vehicle entering a favored highway (Ogden, in this case).
Under the facts as found by the trial court, we consider the effect of the comparative negligence law in the light of the opposing duties. La.C.C. Art. 2323. We find each driver to have been negligent and amend each judgment accordingly. We affirm the judgments as amended.

FACTS
About 6:00 a.m. on a foggy day in November 1982, Ogden drove the van from Nealy's shop in Ruston with a load of automotive parts en route to Jonesboro. He routinely drove easterly on the interstate in Ruston to its intersection with U.S. Highway 167, the Ruston-Jonesboro highway. He said that weather conditions were not *1073 good about daylight and that a "medium" fog impaired his visibility "about a third... or maybe more." When Ogden entered the interstate from the entrance ramp he was driving an estimated 30 to 35 mph because he "couldn't see too well and ... the truck hadn't been warmed up good."
[A]s I come down onto I-20, why I noticed... this light back down I-20 but I thought he had plenty of space back there to get over on his side. He didn't yield. And I come on down onto the road and he hit me from the back.
I thought he had plenty of room back there ... I figure he could travel two or three hundred yards while I was traveling that little distance because he was going real fast.
According to Ogden, the impact occurred in the southernmost eastbound lane of the interstate and about 30-40 feet east of the intersection of the ramp on which Ogden entered the interstate.
Dalton testified that the van was being driven erratically across both lanes as it entered the interstate and that he immediately applied his brakes when the danger became evident, reducing his speed to about 40 mph. Dalton said that the impact occurred in the northernmost eastbound lane. We accept the trial court's adoption of Ogden's version over Dalton's version.
Notwithstanding that the impact occurred within 40 feet of the intersecting entrance ramp, the trial court concluded that "Ogden ... created no sudden emergency... [but] was operating his vehicle with due care and caution for the road and weather conditions ..." The trial court found either or both that Dalton was "traveling faster than he estimated, or his ... speed was excessive for the weather conditions..."
The impact propelled Ogden from his driver's seat into the rear of the delivery van. We accept the trial court's conclusion that Dalton was driving at an excessive speed under the circumstances, or "real fast," as Ogden had noted when he was entering the highway. Nonetheless, we must find, even under Ogden's version, that the trial court was clearly wrong in concluding that Ogden was operating his vehicle with due care and caution for the road and weather conditions and was not comparatively negligent.

STATUTORY DUTIES; COMPARATIVE NEGLIGENCE
The driver of a vehicle approaching a favored highway (Ogden) must yield to oncoming vehicles on the favored highway and avoid creating a hazard to the oncoming vehicles. LRS 32:123. Burge v. Doty, 279 So.2d 273 (La.App. 2d Cir.1973), writ denied. Until he sees or should see the hazard created by the intrusion, the driver on a favored highway may assume that less favored traffic will not intrude or drive into his path. American Road Insurance Company v. Irby, 203 So.2d 427 (La.App. 2d Cir.1967). See also Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2d Cir.1986).
The driver of a following vehicle must not follow another more closely than is reasonable and prudent, having due regard for the speed of such vehicle, the traffic upon, and the condition of, the highway. LRS 32:81(A). While a favored driver is entitled under § 123 to the assumption mentioned above, a following driver who rearends a preceding vehicle is presumed to have been negligent under § 81(A) and must show that the collision happened by reasons other than his fault. Lindstrom v. Arnold, supra.
We cannot conclude that Dalton was "following" Ogden except for a short distance because Ogden's version and the finding of the trial court was that impact occurred within 40 feet of Ogden's entry on the interstate. Ogden clearly was the entering driver and was admittedly aware of the traffic on the favored highway. He breached his duty to yield to Dalton. Ogden admitted his visibility was impaired and that he entered the interstate at about 35 mph in the face of a favored vehicle that he deemed was traveling "real fast."
*1074 Ogden's conclusion that he thought that the favored traffic would have plenty of room or space to maneuver behind him on the interstate was patently unreasonable. Nonetheless, Dalton was correctly found to have been traveling too fast under the existing traffic and weather conditions and was also at fault in this respect.
Ogden created a risk to interstate traffic by entering the interstate under the conditions described, a breach of his duty to yield to the favored traffic. Dalton created a risk to traffic that was entering or was already in front of him by traveling at an excessive speed under those same conditions. We deem that Ogden's contribution to the risk was at least as great as Dalton's contribution. Ogden's unsafe entry onto the interstate created the risk to which Dalton had to, but could not, react, because of his excessive speed.
The rule of comparative negligence under CC Art. 2323 is applied to two-car collisions notwithstanding that under the prior law a driver's contributory "negligence" was sometimes said to be excused or disregarded because of doctrines such as sudden emergency or last clear chance adopted into the case law for the purpose of "avoiding" the contributory negligence bar. Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App. 2d Cir.1984). See also Turner v. N.O.P.S.I., 476 So.2d 800 (La.1985), and casenote at 46 La.L.R. 1071 (1986).
In modifying a trial court's allocation of fault, we apply the principle that we decrease fault to the highest percentage, or increase fault to the lowest percentage, we would affirm, as the case may be. Finley v. North Assurance Company of America, 476 So.2d 837 (La.App. 2d Cir.1985), citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The highest percentage of fault we would affirm on a favored driver in these circumstances is 50 percent. We shall amend each judgment accordingly.

THE DRIVER'S DAMAGES
Ogden was 78 years old when the accident occurred. Before and after the accident, Ogden was active for a person of his age and condition. He was hospitalized for about a week after the accident because of trauma and pain to his neck, shoulders, and left leg.[1]
Ogden's treating physician discharged him from further treatment two months after the accident. Pain in Ogden's neck and shoulders, while gradually diminishing, has continued to impair the performance and enjoyment of some of his activities.
Before the accident, Ogden worked full time each week driving trucks, delivering parts, and working as a mechanic on his employer's trucks. Since the accident, he is no longer able to work as a mechanic because the residual pain in his neck and shoulders prevents him from getting under the trucks and fully extending his arms. Ogden has driven a truck and delivered merchandise after the accident, but has been able to do so only for two days in one week and three days in the next, rather than five days each week as he had done before the accident.
After the accident, Ogden has not been able to hunt squirrels or to sleep as comfortably as before.
In its reasons for judgment the trial court awarded Ogden $2,500 for his [past] pain and suffering and $12,500 for "permanent disability ... loss of function of his left hip and leg, and future pain and suffering." As defendant emphasizes, the evidence shows a greater injury to Ogden's neck and shoulders than to his left leg. Although Ogden was not disabled in all respects, he has suffered some permanent impairment and discomfort. The appeal is *1075 from the judgment, which we find supported. CCP Art. 2083; Caldwell v. Second Judicial District Indigent Defender Board, 475 So.2d 96 (La.App. 2d Cir.1985), writ denied. We cannot say that the trial court abused its discretion in awarding $15,000 general damages in the judgment under the circumstances of this record. Coco v. Winston Industries, Inc., supra.

THE EMPLOYER'S DAMAGE
The 1977 Dodge van owned by Nealy was a total loss. Nealy's witness, who did not inspect the truck after the accident but who was familiar with its condition before the accident, testified that the van's pre-collision value was $5,500. Dalton's witness, who had not seen the van before the accident but inspected it afterward, opined that its pre-collision value was $2,900-3,300.
Nealy's witness hypothetically acknowledged the salvage might bring $750-800 at auction, basing his estimate on a general description of the damage to the van that was related to him while he was on the witness stand.
Dalton's witness, on the other hand, solicited three bids for the salvage after inspecting the damaged van. The bids averaged $400.
The trial court accepted the pre-collision value of Nealy's witness and the salvage value of Dalton's witness. Nealy was awarded $5,200 ($5,500 pre-collision value, less $400 salvage value, plus $100 towing cost). We find no error or abuse of discretion in this award.
Ogden's comparative fault, of course, is imputable to his employer, Nealy. Leonard v. Red Ball Motor Freight, Inc., 301 So.2d 752 (La.App. 2d Cir.1974), writ refused.
Each judgment is amended to decree each driver to have been 50 percent at fault, to reduce the amounts awarded accordingly, and to assess costs of the appeal one-half to the respective plaintiff-appellee and one-half to defendant. Each judgment, as thus amended, is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] Because he also complained of abdominal pain, Ogden was examined and found to have a hernia which was surgically corrected about eight months after the accident. He had previously had hernia surgery 40 years before. Several months after the accident he also had a minor operation on his left knee but he did not relate the knee problem to the accident. He did not seek special damages for these surgeries.