NORRIS, Judge.
Plaintiff, John Davis, a Department of Transportation and Development (DOTD) employee, brought this action against defendants, L.J. Earnest, Inc. (Earnest), general contractor, and its insurer, Valley Forge, for personal injuries sustained when his truck hit a 24 foot wide, 10 inch deep, unfilled hole in a portion of 1-20 under construction. The trial court found Earnest negligent for failing to adequately warn Davis of the danger. It also found Davis negligent in failing to act reasonably and exercise adequate care under the circumstances. Applying comparative negligence principles, the court allocated 10 percent of the fault to Earnest and 90 percent to Davis. Judgment was rendered in favor of Davis for $36,912.12, 10 percent of the proven damages. Davis alone appeals this judgment contesting only the trial court’s apportionment of fault. For the reasons expressed, we amend and affirm.

Factual Background

On May 2, 1987, the date of this accident, the State of Louisiana, through the DOTD, was restoring 1-20 in Caddo Parish to maintain its federal funding. The large project was divided into smaller projects according to geographical location. Pavloffs project (named after the construction engineer supervising the project), in which this accident occurred, ran westward from the Red River to Hudson Street. Earnest, a general contractor, was issued a maintenance purchase order to repair this portion. Hannon’s project began at Hudson Street and continued west to Buncombe Road. Davis was a DOTD highway inspector assigned to Han-non’s project.
At the preconstruction meeting, attended by all project engineers and general contractors, DOTD officials decided to close off, during the entire construction period, I-20’s two southern westbound lanes to public traffic; only one northern westbound lane would remain open. Further discussions took place regarding the method to be used to channel traffic into the one open lane and to mark unfilled holes in the construction zone. DOTD officials decided to use orange and white striped plastic barrels as both channelizing devices to funnel traffic and warning signs for open holes.
Repairs entailed sawing and removing entire sections of defective pavement, cleaning the hole, installing dowel bars in the sides of *65 the hole, and refilling it with concrete. The parties stipulated at trial that Earnest was responsible for marking or barricading open holes on the construction project. Earnest employed subcontractor, Charles L. Keen, full-time to maintain the barrels. Keen testified that he was on call 24 hours a day and usually drove through the construction site periodically during the day to ensure that all barrels were properly placed.
In the early morning on May 2, 1987, Davis was traveling west on 1-20 to inspect a 7:00 a.m. concrete pour at Jewella Road. The congested traffic stopped between the Line Avenue and Fairfield exits. Davis testified he was late because he changed two flat tires on his state vehicle that morning, so he decided to drive in the closed lanes under repair instead of sitting in traffic. He stated that he pulled into the construction zone, stopped his truck, turned on the emergency flashers, and continued forward at approximately 30-35 m.p.h. Davis testified that he had his eyes on the road ahead but admitted he may have looked toward the open traffic lane. Suddenly he saw dowel bars in the road ahead, but could not brake soon enough to avoid running into the hole (the police report indicated he left skid marks of 50-60 feet). He testified that the hole was difficult to see, which was corroborated by his physics expert, Dr. Thomas Moss, Davis’s supervisor, Levone Woodard, and DOTD highway inspector, Davis Marston Jr. When Davis struck the hole, he sustained severe back injury necessitating surgical fusion of his spine at three levels and resulting in a 32 percent permanent disability over his entire body.
The accident report shows it was daylight and overcast when the accident occurred. The skidmarks show that Davis was driving in the center of the two lanes. There were no eyewitnesses to the accident.
Woodard, also en route to the pouring at Jewella, noticed Davis’s truck when he passed 10 to 15 minutes later. Eric Richard and Davis Marston, DOTD highway inspectors on Pavloffs project, arrived shortly thereafter. All three testified at trial as to their recollection of the barrels marking the accident site. Woodard and Marston both ■testified that there were two barrels; they observed one barrel lying inside the hole and one standing in the channelizing line. Richard’s testimony differed in that he recalled an additional barrel standing on the far left-hand side of the hole near the concrete median, for a total of three barrels.
Marston also testified that upon his arrival, Davis asked him, “Where are your barrels?” Hannon testified that Davis told him he saw two barrels and thought he could drive between them. Davis denied this and the presence of skid marks showing Davis tried to brake tends to support him. Davis testified that he did not see any barrels as he approached the hole, but recalled one inside the hole after the accident. Davis did not know the location of this particular hole on Pav-loffs project; however, he stated he knew open holes were present and their position changed frequently.
Plaintiffs traffic safety expert, Dr. Olin Dart, stated that in his opinion a minimum of four barrels, in addition to the channelizing barrels, were required for a hole spanning two highway lanes. Dr. Dart referred to the Manual of Uniform Traffic Control Devices (MUTCD) in support of his opinion, but admitted it offers no authority for the precise number of barrels required under these circumstances. Additionally, Keen testified that two barrels were required for each lane containing a hole.
By written opinion, the trial court found Earnest owed a duty to warn Davis of the open hole in the road. Based on a preponderance of the evidence, the trial court concluded only two barrels marked the hole when the accident occurred. It did not disclose the particular evidence which led to this conclusion. The court, impressed by Dr. Dart’s expert testimony, adopted his finding that a minimum of four barrels were needed to protect this hole. The court concluded had four barrels marked the length of the hole, Davis would have been sufficiently alerted of its presence. Thus, by failing to place a sufficient number of barrels in front of the hole, Earnest breached its duty to provide adequate warning of the hazard.
*66 The trial court also found Davis comparatively negligent, citing in its written opinion the following reasons: (1) inattentiveness; (2) driving in the construction area only to save time; (3) driving too fast under the circumstances; (4) disregarding his own safety; and (5) assuming the lane was clear and not being extremely cautious. Finding Davis considerably more at fault in causing the accident, the court allocated fault 90 percent to him and 10 percent to Earnest.

Discussion

Davis does not contend that he was free from fault, only that the trial court apportioned him too much fault. As he appeals only the percentage of fault apportioned to him, we will not disturb the trial court’s finding that both Davis and Earnest were negligent, but merely ask whether it allocated fault in the proper amount to each party.
Apportionment of fault is a factual matter and the trial court’s findings should not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Baugh v. Redmond, 565 So.2d 953 (La.App. 2d Cir.1990); Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). In apportioning fault, the court should consider the nature of the conduct of each party at fault and the extent of causal relationship between the conduct and damages. Ingram v. Caterpillar Machinery Corp., 535 So.2d 723 (La.1988). Factors to be considered include (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). Based on the record in this case, we find the trial court was clearly wrong to apportion 90 percent of the fault to Davis.
The trial court found that Earnest owed a duty to warn Davis, a DOTD highway inspector permitted to use the closed construction lanes, of the open holes in that portion of the road. The trial court found that Earnest breached its duty by failing to use a sufficient number of barrels to demarcate the shole. This finding was not appealed by either party.
Earnest’s conduct, failing to maintain an adequate number of barrels in front of this particular hole, was inadvertent. Keen, the person responsible for ensuring the correct number of barrels stood in front of each hole, testified that four barrels should have marked the hole, two in each lane. Two state highway inspectors had traveled the lanes that morning prior to the accident and noted nothing unusual. However, they also testified that it was not uncommon to see barrels out of place. The record evidence suggests that barrels were commonly displaced, either by vehicles, youths, or strong winds.
Nevertheless, Earnest, the general contractor for the project, knew the exact location of every unfilled section of pavement and was therefore in a superior position to guard against the risk of harm from those unfilled holes. In fact, Earnest hired additional full-time help, Keen and his crew, to keep the barrels in place.
The overwhelming evidence shows further that Earnest knew employees, other than those working on its project, used the construction lanes regularly. Marston, another highway inspector, testified that he usually drove in the closed construction lanes. Woodard, Davis’s immediate supervisor, testified that inspectors were permitted to travel in the construction lanes. Finally, Hannon admitted he did not instruct employees to avoid driving in the construction zone and did not reprimand Davis after this incident for using those lanes. In fact, Hannon specifically stated that the barrels were in place primarily to warn workers using the closed construction lanes. Because employees presumably knew where the hazards were on their own projects, the barrels were obviously there to warn employees on other projects, such as Davis, who were merely traveling through those lanes.
A preponderance of the evidence indicates the hole was extremely hard to see. Mr. Woodard, who drove through the same area *67 after the accident to observe the hole, stated it was hard to see because of the contour of the ground. Davis Marston stated he knew there was a risk driving in that area because even with the barrels, the hole was “awfully hard to see because of the rise in the interstate.” R.p. 576. This poor visibility was corroborated by plaintiffs physics expert, Dr. Thomas Moss. Dr. Moss explained, from an approaching pickup truck, the slab on the far side of the hole would appear raised. Thus, from 100 feet, six inches of the exposed edge is visible and at 200 feet, three inches, etc. That is, the further the distance from the hole, the smaller it appears; 100 feet away, the open hole appears as a three inch line and at 200 feet, it appears as a one and a half inch line.
Clearly, the severe and practically hidden danger posed by the unfilled section of concrete required a clear and unambiguous warning, sufficient to alert not only construction workers using those lanes, but also any motorists who may inadvertently enter those lanes. The grave risk of harm created by Earnest’s substandard conduct in this case may have been avoided by maintaining four barrels in front of the hole.
Davis’s conduct was also a significant cause-in-fact of the accident. Davis’s conduct however, at least his traveling in the construction lanes, cannot be characterized as inadvertent. He consciously and intentionally chose to drive in the construction zone, knowing the exact nature of the danger. He was an experienced highway inspector whose responsibilities included cheeking signs and barrels on Hannon’s project and viewing the refilling of holes. At the time of the accident, he was performing these duties on an almost identical project just west of the one where he was injured. Clearly, Davis knew the road was under construction, open holes existed, and he would encounter them.
However, Davis, who worked on Hannon’s adjacent project, did not know and could not be expected to know the precise location of every hole on Pavloff s project. Davis admitted he had driven on Pavloffs project prior to the accident; however, the evidence shows the position of the holes changed frequently. Earnest, who knew precisely where the holes were located, was in a much better position to warn of the danger. Davis not only did not know where the holes were located, but the evidence shows that this hole, without proper marking, was extremely difficult to see from Davis’s vantage point.
The trial court found that Davis should have been extremely cautious when driving through the construction area. The record evidence supports that Davis was momentarily inattentive and driving too fast under the circumstances. Davis admitted in deposition that he looked to his right at the open travel lane and saw he could reenter it, just prior to striking the hole, and was later impeached when he denied this at trial. In addition, Davis knew he was late for a 7:00 a.m. concrete pour. In his haste, he may not have been exercising his usual caution.
Furthermore, the trial court was not clearly wrong to find that Davis was driving too fast under the circumstances. Davis clearly knew that large open holes in the pavement existed which required him to drive slower and exercise a high level of caution. At trial, he candidly stated he knew that he could not drive fast because of the holes in the road. He estimated he was driving between 30 and 35 m.p.h. The trial court, impressed by Dr. Moss’s testimony, assumed Davis was traveling approximately 36-37 m.p.h. In addition, Hannon testified that he had chided Davis in the past for his high rate of speed. It is also likely that he was driving faster than usual the morning of the accident because he was late and rushing to attend the pour.
The trial court also faulted Davis for “taking this route to avoid the time necessary to reach the same destination in an effort to save time,” in effect holding Davis negligent for using the construction zone. This finding is not supported by the record and is clearly wrong. On the contrary, there were no rules prohibiting workers on the projects from driving in the closed lanes at any time. Davis’s testimony that he was never instructed to avoid driving in the construction zone was substantially corroborated by Marston, another DOTD inspector, who testified he regularly drove in the closed lanes. The practice was common and expressly condoned by both supervisors and project engi *68 neers. Thus, the trial court was wrong to fault Davis for using the construction zone just to save time. Nevertheless, Davis entered that zone with knowledge above that of the average motorist. He knew the exact type of construction being conducted and the risks he would encounter. A person with his knowledge and experience must exercise more than ordinary caution when using a closed construction lane; in sum, he should have known of the potential risk that he would encounter holes in the pavement and exercised the high level of caution required under the circumstances.
Finally, there were no extenuating circumstances requiring Davis to proceed in haste. Admittedly, he was late for the pour; however, his supervisor knew that fixing two flat tires on the state vehicle that morning would cause Davis to be late. Davis testified that Woodard exerted no pressure on him to reach the pour on time.
The trial judge assessed 10 percent fault to Earnest and 90 percent fault to Davis. Based on the record in this case, we find the trial court was clearly wrong to allocate fault in the manner it did. In modifying a trial court’s allocation of fault, we apply the principle that we decrease fault to the highest percentage, or increase fault to the lowest percentage, we would affirm, as the case may be. Ogden v. Dalton, 501 So.2d 1071 (La.App. 2d Cir.1987); Starnes v. Caddo Parish School Bd., 598 So.2d 472 (La.App. 2d Cir.1992). Applying the Watson factors to this case, we find the highest percentage of negligence attributable to Davis that we would have affirmed on appeal is 75 percent. Accordingly, we amend the lower court judgment to fix Davis’s negligence at 75 percent and Earnest’s at 25 percent.

Decree

For the reasons given, we amend paragraph 2 of the lower court’s judgment to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, JOHN W. DAVIS, and against the defendants, L.J. EARNEST, INC. and VALLEY FORGE INSURANCE COMPANY, in the sum of THREE HUNDRED SIXTY-NINE THOUSAND ONE HUNDRED TWENTY-ONE AND 17/100 ($369,121.17) DOLLARS, together with legal interest thereon from date of judicial demand, reduced by seventy-five percent (75%) for the portion of fault attributable to plaintiff.
The remainder of the trial court’s judgment is affirmed. Costs of this appeal are assessed to appellees.
AMENDED AND AFFIRMED.
SEXTON, J., concurs.