294 So.2d 588 (1974)
The TRAVELERS INSURANCE COMPANY
v.
Daniel HARRIS, Jr.
Raymond HARRIS
v.
James J. DIES et al.
Nos. 6224, 6225.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1974.
Rehearing Denied June 6, 1974.
Taylor, Porter, Brooks & Phillips, John R. Tharp, Baton Rouge, for The Travelers Ins. Co., and James J. Dies, and others.
Becnel & Kliebert, Larry C. Becnel, Vacherie, for Daniel Harris, Jr. and Raymond Harris.
Before SAMUEL, GULOTTA and BOUTALL, JJ.
SAMUEL, Judge.
This is an appeal from consolidated suits arising out of a collision involving two automobiles. Daniel Harris, Jr. was the *589 driver of one of the cars and James J. Dies was the driver of the other. In one case, Travelers Insurance Company, as subrogee of its insured, James J. Dies, sued Daniel Harris, Jr. for $2,426.35. Harris reconvened against Travelers for damages sustained by him in the collision. The second suit was filed by Raymond Harris, a guest passenger in the automobile driven by his brother, Daniel Harris, Jr. Dies and Travelers were named defendants in that suit and they filed a third party action against Daniel Harris, Jr. for contribution in the event of a finding that the two drivers were joint tort feasors.
After a trial on the merits, there was judgment in the first suit in favor of Travelers as prayed. Harris' reconventional demand was dismissed. In the second case, judgment was rendered dismissing the suit by Raymond Harris, the guest passenger, against Dies and Travelers. From these judgments, both Daniel Harris, Jr. and Raymond Harris have appealed.
The accident occurred in Assumption Parish at approximately 11:20 p. m. on November 21, 1970. This was a Saturday night, and the Harris brothers were departing from a nightclub known as Jamison's Bar on Louisiana Highway 1. Daniel was driving and his brother Raymond occupied the right front seat next to him.
At the location of the accident Louisiana Highway 1 was two lanes in width, one lane accommodating northbound traffic and the other accommodating southbound traffic. The parking lot for Jamison's Bar was next to the northbound traffic lane. Harris backed his car out of the parking lot into the northbound lane at approximately a 55° angle. The vehicle then stalled or otherwise became inoperative.[1] While in this position, the automobile driven by Dies in the northbound lane of traffic struck the Harris vehicle, causing injuries to all persons involved and damage to both automobiles.
Dies testified he was driving at approximately 45 miles per hour and first saw the Harris vehicle when it was 115 feet from him. When he saw the vehicle it was in the act of backing out of Jamison's parking lot into his lane of traffic, at which time he immediately applied his brakes. He further testified that automobiles were parked on the shoulder of the road to his right in front of Jamison's parking lot. While his testimony is somewhat equivocal concerning cars on the left shoulder of the road, he testified that some automobiles were located in that position. He admitted there was possibly room to pass the stalled vehicle on the left side by proceeding in the opposite lane of traffic, but he did not want to take the chance of striking automobiles parked on the left shoulder in attempting such a maneuver. He also testified that there were a few street lights in the vicinity.
Dies' testimony was supported by State Trooper Lawrence Dominique. He arrived at the accident scene after the injured parties had been taken to a hospital, and his testimony encompassed only his physical findings. According to Trooper Dominique, vehicles were parked on both sides of the road. He found the impact debris in the center of the roadway on the white line. Dies' automobile traveled 10 feet past the point of impact and struck a parked car. Harris' automobile traveled 15 feet past the point of impact.
Dominique said the Dies vehicle left 87 feet of solid, unbroken tire marks which ended at the point of impact. From the length and duration of those marks and from the extent of the damage to both vehicles he estimated Dies' speed to be 45 miles per hour, 5 miles under the thenposted speed limit. Dominique further testified he asked bystanders in order to locate a witness to the accident, but no witness volunteered.
Raymond Harris stated his brother backed the automobile into the road and he *590 saw an approaching automobile "way down" the highway. They estimated they had ample time to back into the highway and drive off before the vehicle would have reached them. However, the car stalled. While they attempted to start it, Dies' vehicle struck the left portion of the Harris car and he was rendered unconscious.
Harris estimated his brother's automobile was on the road about one minute before impact, but he could not be sure of the exact time. When he saw the other car coming he tried to flag it down through the closed window by waving his hand. No lights were on inside the car, nor had the flashing signal lights been turned on. Although he first saw Dies' automobile when it was "way down" the road, he testified they did not get out of the automobile to flag the car down because it was coming too fast.
Daniel Harris, Jr., the driver, testified he backed out of the parking lot because the oncoming vehicle was "a long way off." The car then stalled and the impact occurred. He estimated he was stalled in the roadway a minute or a minute and a half prior to impact. He did not ask or suggest that his brother get out of the automobile to flag oncoming traffic, and he also added his brother did not attempt to flag traffic away from the car because he was busy "worrying about me getting it started." Daniel Harris confirmed that while the headlights were on, no blinkers or other warning lights were activated.
Two other witnesses testified. One, Mark Patterson, stated that he was standing outside of Jamison's Bar talking to George Washington. He did not know how long the Harris vehicle was in the roadway prior to impact, nor did he see the Dies vehicle approaching. He nevertheless estimated Dies' speed at between 50 and 60 miles per hour. With regard to distance and speed, his testimony is of little value since he could only state that the Dies vehicle "must have been a good ways" away and it "was probably coming at a high rate of speed". He concluded that Dies seemed to try to avoid the collision but was unable to do so because of his speed.
George Washington's testimony is most in conflict with the testimony of Dies and Trooper Dominique. He was not sure of the length of time between the entrance of the Harris vehicle onto the roadway and the collision, but estimated an interval between one and two minutes. He testified Dies applied his brakes twice, the first time 35 or 40 feet away from the collision and the second time immediately prior to impact. This is in direct conflict with the observations of Trooper Dominique, who stated there was a solid, unbroken line of tire marks measuring 87 feet up to the point of impact.
A high degree of care is imposed upon the driver of an automobile entering a public highway from a private drive, particularly when the vehicle is backing onto the highway.[2] A backing motorist must meet a twofold duty when entering a main thoroughfare. He must first stop and ascertain his maneuver is safe, and then maintain a proper and diligent lookout during the remainder of his backing maneuver.[3] Under ordinary circumstances, the driver of a vehicle which momentarily stalls on a highway is not guilty of negligence.[4] Likewise a motorist approaching another vehicle in the road ahead of him has the duty to discover the vehicle if such discovery can be made with the exercise of ordinary and reasonable care.[5] However, the oncoming driver is not guilty of negligence and is not liable *591 for errors of judgment when compelled to act instantly to avoid a sudden emergency.[6]
Here, the evidence is in conflict to some extent with regard to the distance between the vehicles when Dies first observed or was capable of observing the Harris vehicle in his path. There is also some conflict regarding the speed at which Dies was traveling and the availability to him of an alternate route around either side of the Harris automobile.
At least in material part, the trial judge apparently accepted the testimony of Dies and Trooper Dominique, a conclusion with which we agree. After a thorough review of the record, we are of the opinion the most credible evidence establishes that Dies was traveling within the speed limit and, regardless of whether or not the plaintiff car actually stalled after entering the roadway, Harris backed his vehicle into Dies' path when Dies was such a short distance away as to make the collision imminent. Under these circumstances Dies was faced with a sudden emergency not of his own making. Even if he could have avoided the collision by driving in the face of possible oncoming traffic between the plaintiff vehicle and other vehicles parked on the left shoulder of the roadway, he cannot be held accountable under such emergency conditions for making a mistake in judgment by failing to do so. We are satisfied that when he saw the Harris vehicle back into his path he immediately applied his brakes and continued to apply them up to the point of impact. He was thus faced with two alternative courses of action, both of which were extremely dangerous. With time to reflect, it may well be that the better alternative was to attempt to maneuver around the plaintiff vehicle instead of simply continuing to apply his brakes in the hope his car would stop in time to avoid the collision, or at least lessen the force of the impact. However, he did not have the opportunity for sober reflection and was compelled to make an instant choice between the two unattractive alternatives. He was not negligent in choosing the course of action which he did.[7]
For the reasons assigned, the judgments appealed from are affirmed.
Affirmed.
NOTES
[1] There is some contradiction as to whether the motor stalled or the transmission failed.
[2] Smith v. Hearn, La.App., 181 So.2d 433; Fontana v. Borden's Company, La.App., 155 So.2d 210; Josey v. Granite State Fire Insurance Company, La.App., 122 So.2d 303.
[3] Smith v. Hearn, footnote 2.
[4] Dugas v. Achord, La.App., 238 So.2d 761.
[5] Dugas v. Achord, footnote 4; Boyd v. Damico, La.App., 230 So.2d 425; Robert v. Travelers Indemnity Company, La.App., 196 So.2d 657.
[6] Lee v. Winn, La.App., 216 So.2d 913; Cook v. Dance, La.App., 96 So.2d 350.
[7] Lee v. Winn, footnote 6.