479 So.2d 957 (1985)
Billy E. TOTEN, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, et al., Defendants-Appellees.
No. 84-862.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*958 James Vallee and Maurice L. Tynes, Lake Charles, for plaintiff-appellant.
Brame, Bergstedt and Brame, Frank M. Brame and David McCain, Lake Charles, Glen James, Sulphur, for defendants-appellees.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
DOMENGEAUX, Judge.
This is an action for damages arising out of an automobile accident. The plaintiff-appellant is Billy E. Toten. The defendants were General Motors Corporation, General Motors Acceptance Corporation, Glen Overman Chevrolet, Inc., Glenda Williams, Renee Williams, and Glenda Williams d/b/a Glen Overman Chevrolet.
Prior to trial, the plaintiff dismissed his case against General Motors Corporation, General Motors Acceptance Corporation, and Glen Overman Chevrolet, Inc., and reserved his rights against Glenda Williams, Renee Williams and Glenda Williams, d/b/a Glen Overman Chevrolet.
A trial on the merits was held and the district judge dismissed the plaintiff's case against the defendants holding that the plaintiff's negligence was the sole proximate cause of the accident.
The plaintiff-appellant appeals the decision of the district court and lists two assignments of error:
1. The trial court committed manifest error when it held that plaintiff was 100% at fault in causing the accident.
2. The trial court committed manifest error when it denied plaintiff's claim for damages.

FACTS
This accident occurred at approximately 2 o'clock P.M. on February 3, 1982. February 3, 1982 was a clear day with bright sunshine. The location of the accident was the ascending southbound traffic lanes on the Interstate 210 bridge in Calcasieu Parish, Louisiana. The Interstate 210 bridge is approached by a straight narrow level roadway with two lanes of traffic for southbound traffic (an inner and outer lane). The bridge rises gradually into the air and elevates to a height sufficient to allow ocean-going ships to pass beneath the bridge in a ship channel. The bridge then descends making a turn to the left or easterly. The mishap involved a Chevrolet Impala automobile owned by Mrs. Glenda Williams, d/b/a Glen Overman Chevrolet, Inc., which stalled on the bridge and which was hit in the rear by a Ford Courier pickup truck driven by the plaintiff, Billy E. Toten.
Glen Overman Chevrolet, Inc. is a Chevrolet dealership located in Sulphur, Louisiana. The Chevrolet Impala involved in the accident was a brand new automobile which had tentatively been sold by Glen Overman Chevrolet. The prospective purchaser had requested a sound system be installed in the auto as a condition of purchase. Therefore the auto was to be driven from Sulphur to Lake Charles where a local business would install a new radio. Renee Williams (the daughter-in-law of Mrs. Glenda Williams) was approached by her husband, Glen Williams, the sales manager at Glen Overman Chevrolet and asked if she would drive the Impala to Lake Charles in order to have the radio installed. Renee Williams agreed to do so.
Thereupon, Sara Williams (Renee Williams' sister-in-law) started the Impala, drove it to a gas pump across the street from the dealership, put gas in the vehicle and drove it back to the dealership's service department. Sara then exited the Impala and entered her own car in which she was to follow Renee to Lake Charles for the purpose of returning Renee to Sulphur *959 after leaving the car in Lake Charles to have the car radio installed. Renee entered the Impala and embarked for Lake Charles.
The trip to Lake Charles was uneventful until the vehicle stalled approximately three-quarters of the way up in the outer or the westmost lane of the two southbound lanes of traffic on the Interstate 210 bridge. Renee Williams placed the automobile in park, turned on the auto's emergency flasher lights, and attempted to restart the vehicle without success. During this time, the vehicle driven by Sara Williams was stopped behind the Impala and when Renee failed to restart the Impala she exited the Impala and entered Sara's auto. They then proceeded to the nearest telephone where they telephoned the Louisiana State Police to advise them of the stalled vehicle on the bridge and to call the Glen Overman Chevrolet Company to request that a wrecker be sent to tow the stalled vehicle from the bridge.
While the Impala was stalled upon the bridge traffic continued to successfully maneuver around it. Mr. Toten testified that he was operating his Ford Courier pickup truck in third gear at approximately 30 to 35 miles per hour as he ascended the I-210 bridge where the stalled Impala was located. He further testified that he was closely following a vehicle ahead of him, when that vehicle suddenly changed from the outer to the inner lane as it approached the stalled Impala and that preceding vehicle successfully avoided the Impala and continued past it. He further testified that he was unable to change lanes because of oncoming traffic to his rear in the innermost lane and that he was unable to stop his truck and struck the Impala from the rear.
The plaintiff filed suit on February 3, 1983, basically alleging that the accident was caused by the defendants having negligently parked the vehicle upon the bridge without taking the necessary precautions of warning approaching traffic that the vehicle was stalled and parked on the bridge.
At a trial on the merits the defendants offered testimony that the vehicle was brand new, had been started and run on a regular basis without notice of any mechanical difficulties, and that the moment the vehicle stalled upon the bridge Renee Williams turned on the emergency flashers.
The defendants also presented testimony by Louisiana State Highway Patrolman, Michael Buck; the emergency room nurse at St. Patrick's Hospital, Sheila Veronie; and the wrecker operators from Glen Overman Chevrolet, Mark Williams and Huey Perry to the effect that Mr. Toten was intoxicated at the time immediately following the accident.
Trooper Buck testified that when talking to Mr. Toten during the post accident investigation Mr. Toten advised him that the Impala had jumped the median of a bridge and had hit him head-on. The evidence indicates that the median of the bridge at the location of the accident was approximately four feet tall, made of concrete, with a six foot high metal screen installed at the top. Officer Buck stated that his investigation led him to find that Mr. Toten was incoherent, with a strong odor of alcohol on his breath, and that there were no skid marks evident from the Toten vehicle. Officer Buck further testified that when he confronted Mr. Toten about taking a blood alcohol test, Mr. Toten responded "I am not going to take a blood alcohol test as I know what it will read."
Mrs. Veronie, the emergency room nurse, testified that she also detected a strong smell of alcohol on the plaintiff's breath and that he was, in her opinion, intoxicated and that she had difficulty in attempting to treat plaintiff because of his apparent condition of intoxication.
The plaintiff testified that he had imbibed only one beer on the day of the accident and that beer had been ingested while he ate lunch approximately two hours prior to the accident. Mr. Toten presented testimony by two witnesses who stated that Mr. Toten had drunk only one beer on the day of the accident.
*960 The district judge ruled that the plaintiff, Toten, was 100% at fault in the accident and that his negligence was the sole proximate cause of the accident. The trial judge determined that neither Renee Williams, Glenda Williams, or any of the mechanical or sales personnel at Glen Overman Chevrolet were aware that there were any mechanical difficulties with the Impala. Judge King found further that the emergency flashers on the Impala were visible to attentive motorists who approached the stalled vehicle. The trial judge concluded that Mr. Toten was inattentive, was following the preceding vehicle (which avoided the accident) too closely, and was intoxicated and that a combination of those elements caused the accident to occur.

ASSIGNMENT OF ERROR
The plaintiff-appellant argues that the trial court committed manifest error when it held that the plaintiff was 100% at fault in causing this accident. Essentially he argues that the defendants were negligent because they failed to perform their statutorily imposed duty of protecting traffic (as required by La.R.S. 32:141 B) when an auto is disabled upon a roadway in a non-residential area. The plaintiff contends that Renee Williams should have either removed the stalled vehicle from the roadway or done more to protect traffic than simply turn on the emergency blinkers of the stalled auto. The plaintiff avers that as a result of this negligence the accident occurred.
La.R.S. 32:141 provides:
"A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in any event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence."
The above quoted statute makes it unlawful for a motorist to park a vehicle on the main traveled part of a highway except when the vehicle is disabled and it is impossible to avoid parking the vehicle temporarily on the main traveled part of the highway. When a vehicle is disabled and must be parked upon the main traveled part of the highway it is the motorist's duty to remove the vehicle as soon as possible and to "protect traffic" until the vehicle is removed from the highway. See Lindstrom v. Arnold, 421 So.2d 1178 (La.App. 2d Cir.1982), writ denied, 423 So.2d 1183 (La.1982), and Youngblood v. Oilwell Chemical Company of Louisiana, 352 So.2d 316 (La.App. 4th Cir.1977).
The district judge found as a matter of fact that it was impossible for Renee Williams to avoid leaving the car parked on the bridge, that she turned on the emergency blinker lights as soon as she detected the car was stalled, and immediately upon leaving the auto upon the bridge she went to a telephone to contact a wrecker service to have the vehicle removed from the bridge and the State Police to inform them of the stalled vehicle. From these factual findings the district judge concluded that Renee had met her responsibilities of protecting oncoming traffic and removing the vehicle from the main travelled part of the highway as soon as possible.
*961 We agree with the district judge. There was little more that Renee Williams could have done to protect traffic or to remove the vehicle. If Renee had stayed upon the bridge and attempted to divert traffic around the stalled vehicle she would have placed herself in physical peril.
Furthermore, in view of the trial judge's factual determination that Mr. Toten's inattentiveness, intoxication, and following a proceeding vehicle too closely were the proximate cause of the accident we cannot say that the decision of the district court was manifestly erroneous. See Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Particularly applicable here is the reasoning in Lindstrom v. Arnold, supra. In that case the Louisiana Second Circuit Court of Appeal held:
"The first duty of a motorist is to maintain a sharp lookout ahead. Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400 (La.1978); Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958).
An approaching motorist has the duty to discover a stalled vehicle if he can do so with the exercise of the required degree of care. Travelers Insurance Company v. Harris, 294 So.2d 588 (La.App. 4th Cir.1974). Even if an obstruction is illegal motorists are not excused from exercising the required degree of care in observing. Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148 (1945).
Generally, when a following vehicle collides with the preceding vehicle the following motorist is presumed to be negligent and must exculpate himself. Tidwell v. Ocean Systems, Inc., 356 So.2d 466 (La.App. 1st Cir. 1977).
* * * * * *
Where, as here, a stalled car could be seen and avoided by the exercise of the appropriate level of care, a driver is negligent in failing to see the vehicle and avoid it. Smiley v. Ellis, 307 So.2d 150 (La.App. 1st Cir.1974), writ refused 310 So.2d 643 (La.1975); cf. Bodan v. American Employers' Insurance Company, 160 So.2d 410 (La.App. 2nd Cir.1964) (failure to keep proper lookout and excessive speed)."
Here the district judge found from the evidence that the blinking emergency lights on the stalled vehicle were visible to attentive drivers approaching the bridge. We also point out that in the short time the stalled vehicle was upon the bridge other motorists avoided it and indeed the plaintiff testified that the vehicle immediately preceding him on the bridge was able to avoid the stalled vehicle. Thus we are in accord with the trial judge's conclusions that Mr. Toten was negligent and that his negligence was the sole proximate cause of the accident.
In view of our determination in plaintiff's first Assignment of Error we deem it unnecessary to consider his second.
For the above and foregoing reasons the decision of the district court is affirmed. All costs on appeal to be assessed against plaintiff-appellant.
AFFIRMED.