558 So.2d 691 (1990)
Luby BAIO and Rachel Baio
v.
Michael HAGGERTY and State Farm Insurance Company.
No. CA 89 0040.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
*692 Robert J. Caluda, New Orleans, for plaintiffs and appellants, Luby and Rachel Baio.
Maurice P. Mathieu, Houma, for defendants and appellees, Michael Haggerty and State Farm Fire & Cas. Co.
John G. Gomila, Jr., New Orleans, for defendant, Jelex, USA, Inc.
Robert D. Morvant, Thibodaux, for intervenor, U.S. Fidelity & Guar. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
Plaintiff, Luby Baio, brings the present appeal from a judgment notwithstanding the verdict granted by the trial judge, following a jury verdict in his favor. The jury returned a verdict in favor of Mr. Baio on his personal injury claim and awarded damages totaling $172,349.50, which were itemized as follows:

Past physical pain and suffering $15,000.00
Future physical pain and
suffering 30,000.00
Past mental anguish 10,000.00
Future mental anguish 0.00
Past loss of wages 15,000.00
Future loss of wages 80,000.00
Past medical expenses 12,349.50
Future medical expenses 10,000.00

Thereafter, a judgment notwithstanding the verdict was granted reducing the award to $72,000.00. The trial judge gave the following reasons for judgment notwithstanding the verdict:
There is no question of liability in this instance because it clearly does exist. However, given the nature and extent of Plaintiff's injuries the Court feels that the quantum is grossly excessive.
The medical testimony revealed that if Plaintiff would lose weight and have therapy his symptoms from the soft tissue injury would clear and there would be no residual effects. Plaintiff neither lost weight nor did the therapy exercises. Ergo, his symptoms have persisted. Therefore, the quantum of the award will be reduced.
The award for future loss of wages will be reduced from $80,000.00 to $10,000.00. This sum of money will compensate Mr. Baio for the period that it will take him to do the requisite therapy. The future medical expenses award will be reduced from $10,000.00 to $5,000.00. The Court feels this is a generous figure for the amount of therapy which will be required to rehabilitate this Plaintiff. The future pain and suffering award of $30,000.00 is reduced to $5,000.00 because his pain and suffering will quickly diminish once he follows a diet and gets into therapy. Therefore, the Court will grant the Motion for Judgment Notwithstanding the Verdict to the extent of reducing the quantum of the award.
Mr. Baio appeals this judgment assigning as error the reduction of the jury's award.[1] United States Fidelity and Guaranty Company[2], intervenor in the proceeding below, has filed an answer to plaintiff's appeal also seeking to have the J.N.O.V. reversed.

FACTS
On April 18, 1985, Luby Baio was employed at Ellendale Country Club where he *693 was engaged in repairing rake handles in a golf cart barn when he was struck by a golf cart and injured. Michael Haggerty, the golf course superintendent for Ellendale, was making repairs on his personal golf cart when the motor accidently started, causing the cart to move forward and strike Mr. Baio. Mr. Baio, who was standing in front of another golf cart when the accident occurred, was struck in his right leg and was momentarily pinned between the two carts.
After being freed from the golf cart, Mr. Baio testified that Haggerty instructed him to return to work; however, he was driven home by another co-employee, James Walter, who had witnessed the accident. Mr. Baio testified that on impact, he felt immediate pain, and that after the cart was pulled away, his leg gave out causing him to fall to the floor; he testified that he was unable to walk on his own. On examination of his leg, Mr. Baio testified that it appeared bruised and swollen with two knots on it. Mrs. Rachel Baio testified that when her husband got home that day, he broke down and cried from the pain. She also testified that Mr. Baio's leg was swollen to almost twice its normal size, that almost his entire leg was black and blue, and that there were two large knots around his knee.
Mr. Baio was first treated by Dr. Bruce Guidry, a general practitioner. Dr. Guidry initially diagnosed a contusion of the right thigh and knee. He treated Mr. Baio through May of 1985, when he referred him to Dr. Del Walker, an orthopedist, after finding tenderness over plaintiff's right medial meniscus. Mr. Baio saw Dr. Walker through mid-October, during which time he was treated by injection and underwent testing at Terrebonne General Hospital.
On recommendation of the president of Ellendale Country Club, Mr. Baio went to see Dr. Pete Rhymes, an orthopedic surgeon. Dr. Rhymes diagnosed a sprain of the knee and prescribed physical therapy, a knee support, an anti-inflammatory drug, and pain medication; he also recommended that Mr. Baio not work. In December of 1985, Mr. Baio complained of worsened pain and on examination, Dr. Rhymes found crepitation or grinding in the knee for which he suggested arthroscopic surgery.
The surgery was performed on February 4, 1986 at Terrebonne General Hospital and it revealed an area of roughening on the kneecap which was shaved down. Following the surgery, Mr. Baio was placed in an "immobilizer" brace. Although Dr. Rhymes initially thought the surgery to be successful, the March examination revealed returned crepitation in the knee. In April, Dr. Rhymes found continued crepitation and weakness of the thigh muscle. At that time Dr. Rhymes suggested that Mr. Baio continue his exercises and attempt to lose some weight. Additionally, he suggested avoidance of activities stressful to the knee, such as squatting, stooping, repetitive bending, or repetitive stair climbing. Surgical performance of a McKee procedure was considered to relocate a tendon attachment in plaintiff's knee, thereby avoiding the area of chondromalacia. Because of difficulties in getting insurance approval of the surgery, it was not performed until February of 1987.
The surgical procedure lasted approximately one hour and required a five-day hospital stay. Two incisions were made, one in the knee area and the other over the hip. It was necessary to obtain a bone graft from the hip to use in the knee; the procedure was described by Dr. Rhymes as follows:
Where the tendon from the kneecap hooks into the leg bone here, we come in behind it with an osteotome or a cutter and cut into the bone, raise it up, and put this piece of bone we're taking out of the hip behind this so that we're elevating it and bringing it out, so that this tendon, instead of pulling in this direction, is tending to pull more in this direction. So we change the angle of pull so that we take some of the pressure and load off of the kneecap....
Following the surgery, Mr. Baio wore a cast for six weeks, and was on crutches for approximately two additional months. On Mr. Baio's last visit to Dr. Rhymes prior to *694 trial, x-rays were taken which revealed osteoporosis or softening of the bone. Dr. Rhymes indicated that osteoporosis results from disuse or non-weight bearing and is an anticipated consequence of the surgery.
At trial, Dr. Rhymes assigned plaintiff a 50% disability. He further testified that Mr. Baio will need an additional six weeks of physical therapy and approximately four more months of a doctor's care if he responds well to treatment. Dr. Rhymes indicated that if the patient did not respond well to treatment, there was nothing more which could be done for him other than the prescription of pain and anti-inflammatory medication. Dr. Rhymes further indicated that Mr. Baio may develop arthritis in the knee which would require future surgery. Eventually, Dr. Rhymes indicated that Mr. Baio may need an artificial knee if severe arthritic changes occur.
At the time of the trial, Mr. Baio testified that he has been uanble to work because of the condition of his knee. He testified that he has been and continues to be in a great deal of pain and that his leg sometimes "gives away" on him. Mr. Baio testified that he is unable now to do things that he could do before the accident, such as, playing with his seventeen-month-old child, dancing, biking, fishing, woodcrafting, working on his car, gardening, or mowing the lawn. Additionally, Mr. Baio testified that his physical condition has put a strain on his marriage because of his impaired intimate relationship with his wife and his inability to provide for his family. The testimony of Mrs. Rachel Baio corroborated her husband's account of his limited physical capabilities and the resulting stress on the family. Mr. Baio's mother, Joyce Baio, also corroborated plaintiff's impaired condition.

JUDGMENT NOTWITHSTANDING THE VERDICT
The Louisiana Supreme Court set forth the criteria for the granting of a judgment notwithstanding the verdict in Scott v. Hospital Serv. Dist. No. 1, 496 So.2d 270 (La. 1986), wherein it stated:
When there is a jury, the jury is the trier of fact. LSA-C.C.P. art 1736.
The rules governing a motion for judgment notwithstanding the verdict are found in LSA-C.C.P. art. 1811. The article does not specify the grounds on which the trial judge may set aside a jury verdict. The Official Revision Comments state that "... a judgment N.O.V. is based on a different standard [from additur and remittitur]namely, that based on the evidence there is no genuine issue of fact. Thus where the trial court is convinced that, under the evidence, reasonable minds could not differ as to the amount of damages [or as to liability], it should have the authority to grant the appropriate judgment notwithstanding the verdict."
Because this article was based on a federal rule, the decisions of the federal courts can be used for guidance. Madison v. Travelers Insurance Company, 308 So.2d 784 (La., 1975); State v. Bradford, 367 So.2d 745 (La., 1978); Parish National Bank v. Lane, 397 So.2d 1282 (La., 1981).

Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), decided by an en banc court, set out the criteria to be followed on motions for directed verdict and motions for judgment notwithstanding the verdict in the federal courts. When "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied ..." 411 F.2d at 374. Also see Backer v. Coursey, 472 F.2d 887, 888 (5th Cir.1973); Melancon v. Western Auto Supply Co., 628 F.2d 395, 397 (5th Cir.1980); and Dalton v. Toyota Motor Sales, Inc., 703 F.2d 137, 140 (5th Cir.1983).
Various Louisiana courts of appeal have treated the subject of judgment notwithstanding *695 the verdict. Robertson v. Penn, 472 So.2d 927 (La.App. 1 Cir.1985) applied the correct standard for judgment N.O.V. which requires that the motion be granted "... only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover." [Footnotes omitted.]
The trial judge found, as evidenced by his written reasons for granting the J.N. O.V., the persistence of Mr. Baio's physical symptoms to be caused by his failure to lose weight and do the prescribed therapy exercises. Thus, the trial judge concluded, the plaintiff is not entitled to the quantum of damages awarded by the jury. Although the court stated the proper standard for granting a J.N.O.V. in its reasons, it was not properly applied. For this reason, we must reverse the judgment.
Mr. Baio testified that he tried to do the exercises for his leg but that he was unable to do them. Dr. Rhymes stated that it was probable that had Mr. Baio done the exercises on a consistent basis, his quadracep muscles would have returned to normal strength and his knee problem would have cleared up. Although Dr. Rhymes opined that there was a probability the prescribed exercises might have alleviated some of Mr. Baio's physical complaints, we believe reasonable minds could certainly have differed as to the extent of Mr. Baio's culpability for failing to do them.
Likewise, the evidence presented on the issue of Mr. Baio's failure to lose weight did not point so strongly and overwhelming towards a finding of negligence that reasonable minds could not reach different conclusions. The record is unclear as to whether Mr. Baio was instructed to lose weight prior to one year after the accident. Dr. Rhymes' testimony reflected that plaintiff did at one point lose nine pounds but later gained weight. Dr. Rhymes testified that it is more difficult for some people to lose weight than others and noted that obesity, which is a hereditary characteristic, seems to be prominent in Mr. Baio's family.[3]
Accordingly, the trial judge was erroneous in granting a judgment notwithstanding the verdict and the jury verdict should be reinstated. Although the jury awarded $172,349.50, the judgment on the verdict signed July 13, 1987 was in favor of Mr. Baio for only $172,000.00. As this was obviously a typographical error, we amend the judgment herein to reflect the jury verdict of $172,349.50.
For the foregoing reasons, the judgment of the trial court granting a judgment notwithstanding the verdict is reversed, the jury verdict is reinstated, and the judgment is amended to reflect the jury verdict. All costs of this appeal are to be borne by appellees herein.
REVERSED AND RENDERED; JURY VERDICT REINSTATED; JUDGMENT AMENDED.
NOTES
[1] Plaintiff, Rachel Baio (wife of Luby Baio), was enumerated as an appellant; however, no specification or assignment of error was made as to the failure of the trial court to award Mrs. Baio damages.
[2] United States Fidelity and Guaranty Company was the worker's compensation carrier of plaintiff's employer, Ellendale Country Club; intervention was filed to recover benefits paid to plaintiff and judgment was rendered in their favor in the amount of $27,437.50.
[3] Mr. Baio, in October of 1985, weighed 236 pounds and was 5'7" in height.