617 So.2d 1337 (1993)
Kevin BORDELON, Plaintiff-Appellee,
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY, et al., Defendants-Appellants.
No. 92-581.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1339 Steven William Hale and Frank T. Salter Jr., Lake Charles, for plaintiff-appellee.
James R. Nieset, Lake Charles, for defendants-appellants.
Before DOUCET, YELVERTON and COOKS, JJ.
COOKS, Judge.
This is a tort action. Kevin Bordelon sued for injuries he received when a South Central Bell truck driven by its employee, Dwight Young, struck his disabled vehicle. The impact caused the vehicle to strike Kevin with such force that he was knocked over a bridge railing into the marsh below. He suffered severe injuries from the fall.
After trial by jury, Kevin was awarded $225,000.00 in general damages, $132,000.00 in future lost earnings, $25,000.00 for disfigurement and $50,820.28 for past and future medical expenses. On appeal, appellants contend (1) Kevin was guilty of contributory fault in causing the accident; (2) the trial court erroneously instructed the jury that there was a presumption of fault on the part of Dwight Young; and (3) the jury's awards to plaintiff were excessive. Appellee answered attacking the sufficiency of the damages.

GENERAL FACTS
On May 7, 1988, Kevin Bordelon picked up a truck for his father which had been repaired. Kevin proceeded to his father's car lot, traveling northbound on Highway 171. He testified, as the truck descended from the Highway 171 bridge over the Calcasieu River, it began to "sputter and cut out." Kevin coasted down the incline and went a "substantial distance" on the straightaway before the truck stopped. Highway 171 has two lanes running northbound with no shoulder. Although Kevin maneuvered the truck as close to the railing as possible, it was still a good distance into the right lane. Kevin attempted to restart the truck, but was unsuccessful. He then looked in his rear-view mirror, saw nothing coming, popped the hood and put on the emergency flashers. He got out of the truck, went to the front of the vehicle and opened the hood. Kevin testified he "messed" with the battery cable. Defendants postulate this activity disconnected the battery cable, thus turning off the emergency flashers. Kevin denies the flashers were disconnected. Immediately after handling the battery cable, Kevin looked up and saw a truck approaching *1340 him. He quickly went to the back of his truck and began waving his arms to alert approaching traffic.
The South Central Bell truck, driven by Dwight Young, kept approaching. When Dwight Young finally applied his brakes, he lost control of the truck, swerved into the left lane, struck the concrete median bouncing off into the rear of Kevin's truck. Kevin was knocked over the bridge railing and fell some fifteen to twenty feet to the marsh ground. As a result of the accident, Kevin suffered severe injuries for which he brought this lawsuit.

NEGLIGENCE
The resolution of this issue requires two inquiries: (1) was Dwight Young negligent; and, if so, (2) was Kevin Bordelon contributorily negligent. The jury concluded Dwight Young was 100% at fault in causing the accident. Defendants do not attempt to deny negligence on the part of Dwight Young. Instead, they argue Kevin Bordelon should have been found contributorily negligent because he allegedly disconnected the disabled truck's emergency flashers. We disagree.
Based on the evidence, the jury found Kevin was not guilty of contributory negligence. Our review of the record discloses ample support for the jury's conclusion. The issue of contributory fault is purely factual in nature. It is well settled that appellate courts should refrain from reversing a jury's factual determinations in the absence of manifest error. Rosell v. Esco, 549 So.2d 840 (La.1989).
The defendants' "disconnection" hypothesis is based on Kevin's testimony that he "messed with" the truck's battery cable; and on statements by Dwight Young and Glen Menking that they did not notice emergency flashers on Kevin's truck. Ipso facto, they reasoned Young and Menking did not see the flashers because they were disconnected. Plaintiff points out defendants' theory of the accident is entirely speculative and appears for the first time in brief on appeal. The record reveals defendant did not attempt to develop this version of the accident by illiciting trial testimony or submitting expert opinion.
Asa Hoffpauir, the driver of the first vehicle which passed Kevin's stalled truck, testified he knew immediately the truck was stalled because he saw the emergency flashers on and the hood up. Hoffpauir testified, as he switched lanes and passed the stalled truck, he observed Kevin quickly go to the back of the truck and attempt to direct traffic to the other lane by waving his hands. Hoffpauir observed the South Central Bell truck abruptly veer into the left lane, strike the median and careen into the stalled truck, knocking Kevin over the bridge railing. This disinterested witness confirmed, at the time of the accident, the truck's emergency flashers were in operation.
Glen Menking, who was driving closely behind the South Central Bell truck, testified he did not notice any flashers on the stalled truck. Menking's testimony, however, was generally inconsistent with the other witnesses. Menking failed to observe Kevin waving his arms in an attempt to warn the oncoming South Central Bell truck, despite both Asa Hoffpauir and Dwight Young's testimony to the contrary. Interestingly, Menking also testified he did not see Kevin fall over the railing, although Asa Hoffpauir was clearly able to observe this event. Menking's failure to observe and accurately recollect events which both parties admit occurred undoubtedly undermined his credibility in the eyes of the jury. The only remaining witness was Dwight Young.
The jury was entitled to balance Young's testimony against that of the disinterested witness, Asa Hoffpauir. The jury's credibility determinations are given great weight on appeal. A jury's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review absent a finding of clear or manifest error. Corbello v. Southern Pacific Transportation Company, 586 So.2d 1383 (La.App. 3rd Cir.1991), writ denied, 589 So.2d 1052 (La.1991).
In a related assignment of error, defendants allege the trial court committed *1341 error by instructing the jury "when a following motorist collides with a preceding vehicle, the following motorist is presumed to be negligent." They argued Dwight Young should not be considered a following motorist under the facts of this case, because plaintiff's vehicle was stalled. As a consequence, they argued the provisions of LSA-R.S. 32:141 rather than LSA-R.S. 32:81 should apply.
LSA-R.S. 32:141 makes it unlawful for a motorist to park a vehicle on the main traveled part of a highway except when the vehicle is disabled and it is impossible to avoid parking the vehicle temporarily on the main traveled part of the highway. Toten v. General Motors Corp., 479 So.2d 957 (La.App. 3rd Cir.1985). Clearly, this statute does not apply to the facts of the instant case. Kevin's truck was disabled and there was no shoulder on the bridge.
As to the applicability of LSA-R.S. 32:81, we find no error on the part of the trial judge in placing a presumption of negligence on Dwight Young. In support, we cite the following reasoning of the court in Lindstrom v. Arnold, 421 So.2d 1178, 1182 (La.App. 2nd Cir.1982), writ denied 423 So.2d 1183 (La.1982), adopted by this court in Toten, supra, both cases involving a stalled vehicle struck from the rear by an approaching vehicle:
"The first duty of a motorist is to maintain a sharp lookout ahead. Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400 (La.1978); Belsha v. Gant, 235 La. 17, 102 So.2d 477 (1958).
An approaching motorist has the duty to discover a stalled vehicle if he can do so with the exercise of the required degree of care. Travelers Insurance Company v. Harris, 294 So.2d 588 (La.App. 4th Cir.1974). Even if an obstruction is illegal motorists are not excused from exercising the required degree of care in observing. Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148 (1945).
Generally, when a following vehicle collides with the preceding vehicle the following motorist is presumed to be negligent and must exculpate himself. Tidwell v. Ocean Systems, Inc., 356 So.2d 466 (La.App. 1st Cir.1977).
* * * * * *
Where, as here, a stalled car could be seen and avoided by the exercise of the appropriate level of care, a driver is negligent in failing to see the vehicle and avoid it. Smiley v. Ellis, 307 So.2d 150 (La.App. 1st Cir.1974), writ refused 310 So.2d 643 (La.1975)."
The record reflects it was a clear, sunny day and the road was dry. Dwight Young should have been able to see Kevin's white truck from the time he reached the top of the rise. Had Dwight Young maintained a proper lookout he would have seen Kevin's truck and should have been able to easily avoid the accident by either stopping, or by slowing and then changing lanes, as both Asa Hoffpauir and Glenn Menking were able to do.
Defendants argue the trial judge's instructions confused the jury and led to its erroneous failure to assign contributory fault to Kevin Bordelon when the facts left no other reasonable conclusion. This argument is unpersuasive. The trial judge fully instructed the jury of its duty to determine Kevin's contributory fault, if any. The jury's failure to apportion any fault to Kevin does not evidence confusion. Rather, defendants simply did not establish contributory fault on the part of Kevin Bordelon. The record supports the jury's finding.

DAMAGES
The plaintiff seeks an increase in the amount of general and special damages, and an increase in the award given to Kevin for his future loss of earnings capacity. The defendants request a reduction in the general and special damage awards for excessiveness and Kevin's alleged failure to mitigate damages. Defendants also ask this court to decrease the special amount awarded for future loss of earnings.
We first address the general allegations of the parties concerning the jury's quantum assessments. The jury is given much discretion in awarding general damages. Because the trier of fact has the *1342 advantage of seeing the witnesses and evaluating their testimony, absent a clear abuse of discretion, an appellate court should not tamper with the jury's award. Coco v. Winston Indust. Inc., 341 So.2d 332 (La.1976).
Our review of the record indicates Kevin Bordelon suffered multiple traumatic injuries, including multiple lacerations on the back of the head, the right side of the face, irritation of the right eye; and obvious deformity of the right leg and multiple abrasions of the right leg. Kevin sustained a femoral shaft fracture and a fracture of the fibula. He underwent corrective surgery which required placement of a metal rod through a broken leg bone. Kevin also underwent a split thickness skin graft on his right leg, which required healthy skin to be removed from his upper left thigh and placed on the right lower leg. While the skin graft was a success, Kevin is still left with noticeable scarring and areas of right leg indentation. Kevin has consistently complained of lower back pain since the accident. Mild bilateral facet hypertrophy was diagnosed, which Dr. Gunderson testified was unusual for someone Kevin's age. Kevin attempted to work at two (2) jobs, but claims he was forced to quit because of pain.
Dr. Gunderson testified Kevin has made good recovery from his injuries. Dr. Gunderson further testified any pain Kevin still experiences is permanent. Kevin now suffers from a slight limp which likewise is permanent. Dr. Gunderson assigned Kevin a 10 to 15 percent permanent disability rating as a result of the injuries received, which will obviously limit Kevin's future employment and recreational activities.
The defendants point out Kevin did have a preexisting spondylolysis. However, no physical restrictions were placed on Kevin's activities prior to the accident. Dr. Anderson, his family physician, had never treated him for any leg or back pain. Furthermore, Dr. Gunderson testified if he had examined Kevin before the accident and discovered the spondylolysis, he would not have restricted Kevin's physical activities. Based on this medical testimony, the jury could have reasonably concluded the accident caused Kevin's spondylolysis to become symptomatic.
Accordingly, the jury's awards to Kevin Bordelon for general and special damages were neither excessive nor inadequate.

PLAINTIFF'S DUTY TO MITIGATE DAMAGES
In brief defendants request a reduction in damages based on Kevin's alleged failure to mitigate damages. Specifically, defendants contend Kevin did not engage in a regular exercise program as recommended by Dr. Gunderson; and, thus, breached his duty to mitigate damages. This mitigation question is squarely in the jury's province. The jury's award should not be overturned absent clear abuse of discretion. Baio v. Haggerty, 558 So.2d 691 (La.App. 1st Cir.1990); Downey v. Clark, 426 So.2d 331 (La.App. 2nd Cir. 1983).
The record reveals Kevin did engage in at least some morning exercise and frequently walking. While the defendants presented evidence to show Kevin only did minimal exercise, this presentation was insufficient to establish that Kevin's self-exercise program retarded his recovery or resulted in any increase in residual disability. Although Dr. Gunderson opined the prescribed exercises might have alleviated some of Kevin's complaints, we find reasonable minds could have differed as to the extent of Kevin's culpability for failing to do more.

FUTURE LOSS OF EARNING CAPACITY
In order to obtain an award for future loss of wages and/or loss of earning capacity, a plaintiff must present medical evidence which indicates with reasonable certainty there exists a residual disability causally related to the accident. Aisole v. Dean, 574 So.2d 1248 (La.1991).
Dr. Gunderson found Kevin suffered from a 15% permanent disability. A plaintiff's disability is presumed to have resulted from an accident if the injured person was in good health before the accident; *1343 the symptoms of the disabling condition appeared and continuously manifested themselves after the accident; and the medical evidence establishes a reasonable probability of a casual connection between the accident and the disabling condition. Hunter v. Kroger Co., 600 So.2d 837 (La. App. 3rd Cir.1992). As previously noted, Kevin's spondylolysis did not affect him prior to the accident. Therefore, the jury was not clearly wrong in finding a causal relation between plaintiff's residual disability and the accident. Accordingly, an award of future lost wages was warranted.
Plaintiff asserts the jury's award of $132,000.00 in future lost earnings was inadequate. Dr. Randy Rice, an economist, performed economic loss evaluations on Kevin Bordelon. Plaintiff contends the jury erred in not awarding $192,273.00 for future lost wages. The record reveals Dr. Rice made calculations based on several possible scenarios. The jury chose not to award the highest amount calculated by the economist for lost future earning capacity. Given the great discretion a jury has in these matters, we will not disturb this award.

DECREE
For the foregoing reasons, the judgment appealed is affirmed in all respects. Costs of this appeal are assessed to defendants-appellants.
AFFIRMED.