I .MARION F. EDWARDS, Judge.
Plaintiffs/Appellants appeal the trial court’s ruling that granted defendant’s Motion for Summary Judgment on the issue of liability in an automobile accident. For the following reasons, the judgment of the trial court is reversed.
FACTS AND PROCEDURAL HISTORY
On the morning of October 30, 2000, defendant, Patrick Waguespack (“Wagues-pack”), was in the process of crossing the Veterans Memorial Bridge, which spans the Mississippi River between Vacherie and Gramercy, Louisiana. At that particular time, visibility was extremely low, due to a combination of fog and smoke from a swamp fire in close proximity. While crossing the bridge, Waguespack’s truck, which was used for his business, St. James Nursery, struck another vehicle that had come to a stop ahead of | ¡Jum. After the accident, Waguespack and the occupants of the other car then exited their vehicles and proceeded to walk down the bridge.
Plaintiffs/Appellants, Lydia Gilton, Susan Johnson and Cheryl Washington (“plaintiffs”) were en route to LaPlace via the Veterans Memorial Bridge on the morning of October 30, 2000. While crossing the bridge, Gilton, the driver of plaintiffs’ car, collided with Waguespack’s parked vehicle.
Plaintiffs filed suit against Waguespack, his business, St. James Nursery, and his insurer, State Farm Mutual Automobile Insurance Company (“defendants”) in the Twenty-Third Judicial District Court for the Parish of St. James. Defendants subsequently filed a Motion for Summary Judgment on the issue of negligence. After a hearing on April 1, 2002, the trial court granted the defendants’ Motion for Summary Judgment. Plaintiffs timely filed this appeal.
LAW AND ARGUMENT
In their sole assignment of error, plaintiffs assert that the trial court committed reversible error when it granted defendants’ Motion for Summary Judgment, arguing that there are still genuine issues of material fact regarding whether Wagues-pack was negligent in causing the collision.
Appellate courts review summary judgments de novo under the same criteria *159 that govern the district court’s consideration of whether summary judgment is appropriate.[1] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of Inlaw.[2] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[3] There must be a “genuine” or “triable” issue on which reasonable persons could disagree.[4] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show “that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” A material fact is one that would matter on the trial of the merits.[5]
At the hearing on the Motion for Summary Judgment, the defendants presented the trial court with two theories of why Gilton was solely negligent for the collision. First, defendants relied upon LSA-R.S. 32:81, which states, in relevant part:
A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
Second, defendants cited to Campbell v. American Home Assurance Company,[6] a Louisiana Supreme Court case, which stands for the proposition that:
“... [W]hen visibility is impaired by smoke, fog, or other unfavorable atmospheric conditions, a motorist must exercise care in the operation of his vehicle commensurate with the danger created by the conditions. He must reduce his speed and maintain a close lookout. As an extreme measure, when visibility is destroyed or greatly obscured, he must stop his vehicle until conditions permit him to resume travel in reasonable safety.” [Emphasis added].
^Defendants rely upon Campbell in two respects. First they assert that, pursuant to Campbell, Gilton should not have been traveling at such a high rate of speed across the Veterans Bridge in such conditions, and, at most, should have stoppéd her own vehicle long before encountering the Waguespack’s parked truck. Defendants further use Campbell to argue that Waguespack was justified in leaving his vehicle parked where it was after the accident, since visibility was obscured to such a great degree.
There is no dispute regarding the poor visibility on the Veterans Bridge on the morning of October 30, 2000. Plaintiff, Lydia Gilton, testified in her own deposition that after reaching the top of the Veterans Bridge, the fog was so thick that it was difficult to see the hood of her car. Gilton further testified that in response to the fog she slowed her car down to approximately 30 miles per hour, acknowledging *160 that her speed still should have been slower. In his deposition, Trooper Matthew Sinanan testified that even four miles an hour would have been too fast to travel through the smog bank.
Plaintiffs argue that LSA-R.S. 32:81 is inapplicable to the facts of the present case, asserting that the statute only applies to vehicles that are traveling, not vehicles that are in a stopped or parked position. Plaintiffs further suggest that Campbell is likewise inapplicable, instead arguing that the measure of their negligence is not the issue at this point in the case. Instead, plaintiffs claim that the trial court should have considered LSA-R.S. 32:141, which states, in pertinent part:
A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be |Kleft for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.
D. In the event of a motor vehicle accident, if the driver is not prevented by injury and the vehicle is not disabled by the accident, or the accident has not resulted in serious injury or death of any person, the driver shall remove the vehicle from the travel lane of the highway to the nearest safe shoulder. Compliance with the provisions of this Subsection shall in no way be interpreted as a violation of requirements to remain at the scene of an accident as provided for in the Highway Regulatory Act or by R.S. 32:414. [Emphasis added].
Plaintiffs argue that Waguespack did not satisfy the requirements of LSA-R.S. 32:141. In particular, plaintiffs argue that Waguespack failed to provide any kind of warning to motorists that his vehicle was stopped in the middle of the roadway.
Defendants claim, however, citing the case of Kounter v. Carleton,[7] that Waguespack acted reasonably under the circumstances, and that jurisprudence does not require a person to put himself in peril to satisfy the written tenets of LSA-R.S. 32:141. Specifically, defendants argue that, because of the visibility conditions, it would not have been either safe or practical for Waguespack to flag traffic, and that even had he placed his hazard lights on, as required by the statute, they would not have been seen by Gilton.
*161 |fiIn Kounter, the defendant’s vehicle stalled on a bridge outside of the lane of traffic. She pulled her vehicle as far to the right as she could and activated her emergency flashers. After unsuccessfully trying to flag down passing motorists, the defendant then left the car to summon the police. Plaintiffs vehicle ran into the defendant’s vehicle, and he sued defendant for negligence under the theory that she was negligent in leaving her car unattended without taking the necessary precautions of warning approaching traffic, pursuant to LSA-R.S. 32:141. In affirming the trial court’s finding that the defendant was not negligent in causing the accident, the Third Circuit noted:
In the present case, defendant could not avoid stopping on the bridge. She stopped as far to the right as possible in the right lane and activated her emergency flasher lights. After trying to flag someone to stop and help her, she went down the bridge and had someone call the police. Before the police arrived, the accident occurred.[8]
We find Kounter to be distinguishable from the present case. Specifically, we note that, although the fact is conceded by counsel for defendant, the record does not indicate whether Waguespack activated “the appropriate signal lights” following the first accident, as required by LSA-R.S. 32:141. The record is further devoid of evidence regarding whether or not it would have been practical or possible for Waguespack to move his vehicle off of the roadway to the nearest safe shoulder, as the defendant in Kounter had done.
|7After a review of the record, we find that there are genuine issues of material fact regarding whether Waguespack’s actions preceding the second collision involving plaintiffs did, in fact, violate La. R.S. 32:141. Accordingly, the judgment of the trial court is reversed.
REVERSED.

. Bua v. Dressel, 96-79 (La.App. 5th Cir.5/28/96), 675 So.2d 1191; writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348; citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.

. Tassin v. City of Westwego, 95-307 (La.App. 5th Cir.12/13/95), 665 So.2d 1272.

. Rowley v. Loupe, 96-918 (La.App. 5th Cir.4/9/97), 694 So.2d 1006.

. Id. at 1008.

. J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5th Cir.2/14/96), 670 So.2d 1305.

. 260 La. 1047, 258 So.2d 81 (La.1972).

. 510 So.2d 1370 (La.App. 3rd Cir.1987).

. Id. at 1374. The court further noted their previous opinion of Toten v. General Motors Corp., 479 So.2d 957 (La.App. 3 Cir.1985), in which they ruled that under the set of circumstances, if defendant had stayed upon the bridge and attempted to divert traffic around the stalled vehicle she would have placed herself in physical peril.